## BOARD OF ED., CITY OF LEHIGH, v. CALVERT et al.

No. 21502. Opinion Filed Feb. 21, 1933.

George Trice and Denver N. Davison, for plaintiff in error.

D. D. Brunson and Ralls & Ralls, for defendants in error.

RILEY, C. J. This is an action commenced by the plaintiff in error against defendants in error to recover upon certain promissory notes and to foreclose a mortgage on real estate given to secure said notes. The parties will be referred to as in the trial court.

It appears that in October, 1921, W. H. Calvert, E. S. Calvert, W. W. Barnett and E. A. Calvert executed and delivered to the First State Bank of Lehigh, their promissory notes aggregating $5,600; that at that time W. H. Calvert was the owner of the land here involved, and he and his

122

wife executed and delivered to said bank a mortgage thereon to secure said notes; that up to about January, 1923, plaintiff had on deposit in said bank more than $10,000 in money belonging to said school district. The deposit was secured by a surety bond. When the surety bond, by its terms, expired, the surety company declined to renew. Shortly thereafter the bank, being unable to turn over the money, assigned the notes and mortgage to the board of education of said school district, apparently as security for or in payment of said deposit. The board held the notes and mortgage until October 20, 1924. About that time W. H. Calvert and his wife conveyed the land to E. S. Calvert, and he and his wife executed the notes and mortgage here involved to the school board. The notes and mortgage theretofore held by the school board were canceled and released.

In the meantime, some seven or eight months after the original notes and mortgage had been assigned to the school board, the bank closed its doors and was taken over by the State Bank Commissioner. The school board did not file any claim against the bank, nor did the bank ever pay any dividend to its depositors.

On May 31, 1928, defendants being in default of payment of interest, taxes, etc., plaintiff commenced this action on the notes and to foreclose the mortgage. The petition is in the usual form. Defendants demurred to the petition upon six alleged grounds, all raising or attempting to raise the question of the right or authority of plaintiff to maintain the action. The demurrer being overruled, defendants answered, pleading, in substance, that plaintiff was without power or capacity to take or hold the notes and mortgage, and was without capacity to maintain the action, and by general unverified allegation stated that defendants were not indebted to plaintiff in any sum.

Although there appears to have been no issue for a jury, a jury was impaneled, and plaintiff introduced evidence showing substantially the above state of facts. Thereupon defendants demurred to plaintiff's evidence, and moved for a directed verdict in their favor. The trial court sustained the demurrer and directed a verdict for the defendants. Thereafter the court entered judgment upon the verdict that plaintiff take nothing by its action, and adjudged and decreed that the notes and mortgage be canceled and held for naught, and to make assurance doubly sure, entered a decree quieting defendant's title to the land and perpetually enjoining plaintiff from thereafter commencing or prosecuting any

action on the notes and mortgage. There was no plea in defendant's answer for the quieting of title or the cancellation of said notes and mortgage or for injunctive or other general relief. From this judgment and decree, plaintiff appealed.

Section 10406, C. O. S. 1921 [O. S. 1931, sec. 6861], clearly empowers the board of education to maintain the action. It provides:

"The public schools of each city or town organized in pursuance of this article shall be a body corporate and shall possess the usual power of corporations for public purposes, by the name and style of 'The Board of Education of the city or town of _____, of the State of Oklahoma,' and in that name may sue or be sued, and be capable of contracting or being contracted with, of holding and conveying such personal and real estate as it may come into possession of, by will or otherwise, or as is authorized to be purchased by the provisions of this article."

It is the contention of defendants that the independent school district is without authority to accept or hold notes of individuals, and that the transaction shown by the record amounts to an investment by the school board of money belonging to the school district in notes of individuals secured by mortgage on real estate, and that in no event may a school district so invest its funds.

It must be conceded that boards of education may in some instances become the owners and holders of property of this nature. For by the terms of section 10443, C. O. S. 1921 [O. S. 1931, sec. 6900], boards of education may accept gifts, donations, and bequests of property and money. The title of the property so given, donated, or bequeathed is vested in said boards of education.

But the transaction was not a gift, donation, or bequest. Neither was it an investment in the ordinary sense. The school board had its money deposited in a bank secured by a surety bond, the bond by its terms expired, and the surety company declined to renew. Instead of demanding its money, and in case of inability of the bank to pay same on demand, attempting to sue on the bond, the school board apparently decided the interests of the school board would be best protected by taking an assignment of the notes and mortgage from the bank. This was at that time apparently beyond the power of the bank to do as being in violation of the provisions of section 4144, C. O. S. 1921, which prior to the enactment of chapter 99, S. L. 1925, prohibited

the bank, banker, or bank officer from pledging its assets as collateral security.

But it does not necessarily follow that the board of education could not under any circumstances take title to the notes and mortgage. Brewster v. Caldwell, 13 Wendell (N. Y.) 28, holds that the trustees of a school district are a corporation for certain purposes, having power to do sundry acts which involve to some extent transactions of moneyed concern, and that they may no doubt receive for money due them the note of a third person. And until a note so received is in some way impeached, or a defense made against it, such trustees are under no obligation to show how they came by it.

Even as against statutory and charter prohibitions, it seems that corporations may take title to real estate for the purpose of self-protection in a way to save debts justly due it. Thompson on Corporations, sec. 2289.

Our attention is not called to any statutory provisions prohibiting boards of education from taking title to property such as notes, etc., secured by mortgage in order to save debts justly due it. Although the board of education may have been mistaken as to its remedy, and may have had the right to sue and recover on the surety bond, we can see no reason why it should have been held to have acquired no title to the notes and mortgage which the bank assigned to it merely because the board of education was mistaken as to how its interest could best be protected. Especially so if the board in good faith believed that this was the only means of protecting its deposit. There is nothing in the record to show any bad faith on the part of the school board.

But, conceding that the transaction between the bank and the board of education was ultra vires as to both parties, the makers of the notes and mortgage could not raise that question in an action on the notes.

In Incorporated Village of Adelphi v. Swinhart, 3 Ohio Dec. (Reprint) 551, it is held:

"Where a municipal corporation without authority of law makes a loan of money and takes a note and mortgage executed by the borrower and his wife to secure its payment, in an action on the note and mortgage, the mortgagors are estopped from setting up the want of power on the part of the corporation to make the loan."

In Scheussler v. Town of Mason (Tex. Civ. App.) 28 S. W. 42, it is held:

"The maker of a note to a municipal corporation is estopped from denying the power of the corporation to loan the money for which the note was given."

In the body of the opinion, it is said:

"In Bond v. Mfg. Co., 82 Tex. 309, 18 S. W. 691, the doctrine is clearly declared in reference to private corporations, and no reason suggests itself to us why it is not applicable to all corporations."

Therefore, had the board of education in the first instance loaned its money to the makers of the original notes they would have been in no position to question the authority of the board to make the loan.

In Housum v. Rogers, 40 Pa. 190, it was held that where a note to a bank was transferred for value, and, with knowledge of the transfer and the failure of the bank, the indorser joined the drawers in renewing the note in the hands of the association, he could not thereafter call in question the power of the bank to transfer the note under its charter, since he was a debtor and not a creditor interested in the assets of the bank and as such entitled to interfere.

E. S. Calvert was the maker of one of the original notes and as such was a debtor of the bank. After the notes and mortgage were assigned to the plaintiff, he took title to the real estate conveyed by the mortgage and executed a new note covering his own indebtedness and all of that of the makers of the other original notes, and thereafter executed the notes and mortgage involved herein. In exchange therefor he obtained the surrender of his own note and the release of the original mortgage on the land. He also in return for the new notes and mortgage obtained the surrender of the notes of the other makers. Defendant, having received the benefit of the release of the original mortgage and the surrender of his own note, is in no position to deny the validity of the new note and mortgage. Ewing v. Bd. of Com'rs, 53 Okla. 250, 156 P. 229; First Nat. Bank v. Womack, 56 Okla. 359, 156 P. 207; Citizens State Bank v. Drumright State Bank, 116 Okla. 213, 244 P. 178.

Under the record, we hold that defendants are bound upon the notes and the mortgage, and that the trial court erred in its ruling and judgment.

The judgment and decree of the trial court is reversed and the cause is remanded, with directions to enter judgment for plaintiff on the notes and for the foreclosure of its mortgage lien.

CULLISON, V. C. J., and SWINDALL, OSBORN, BUSBY, and BAYLESS, JJ., con-

124

cur. ANDREWS, McNEILL, and WELCH, JJ., absent.